Filed 2/17/23 P. v. Solis CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>KALVIN SOLIS,<br><br>Defendant and Appellant. | F082693<br><br>(Super. Ct. No. VCF351754A)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tulare County. Nathan G. Leedy, Judge.

Mark Alan Hart, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Brook A. Bennigson, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

On May 25, 2017, Kalvin Solis began helping an accomplice plan an armed-by-gun robbery targeting a marijuana dealer. The plan ultimately involved Solis's friend

driving around, gathering up the participants including the accomplice, retrieving a gun from a third party, and meeting the dealer.

The meeting eventually took place on May 28, 2017. The dealer arrived first in a separate car. Solis's group then arrived and the accomplice met with the dealer in the car. The accomplice, while attempting the robbery, shot and killed the dealer. Solis's group fled with his friend still driving. They were all arrested a short time later.

The People charged Solis with first degree murder based on a felony murder theory. A robbery-murder special circumstance was also alleged. A jury found Solis guilty as charged and he was sentenced to serve life without parole in prison.

The question on appeal is whether the evidence supports the verdict. More specifically, does the evidence prove Solis was a major participant and acted with reckless indifference to human life? We hold that it does and will affirm the judgment.

## BACKGROUND

**Charges**

The Tulare County District Attorney charged Solis with the following crimes: murder (Pen. Code,[1] § 187, subd. (a); count 1), conspiracy to commit robbery (§ 182, subd. (a)(1); count 2), robbery (§ 211; count 3), robbery (§ 211; count 4), and providing false information (§ 148.9, subd. (a); count 5). The charges included the following allegations: robbery-murder special circumstance (§ 190.2, subd. (a)(17); count 1), crime committed while on bail (§ 12022.1; counts 1 & 2), and personally using a deadly weapon (§ 12022, subd. (b); counts 3 & 4).[2]

---

[1] All statutory references are to the Penal Code.

[2] Counts 3 and 4 relate to robberies we find immaterial to this opinion.

2.

**Trial Evidence**

A few days before the shooting, Solis texted the accomplice, "Let's rob more niggas[.]" On the day of the shooting, a friend texted Solis, " 'I got the car keys[].' "[3] The friend then drove to pick up another friend before picking up Solis.

Solis then "hit up" the accomplice and asked, " 'Are you still trying to come?' " The accomplice responded, "We should bring Cahlan … [o]r someone else just incase [*sic*]. I feel like someone's gonna be with" the intended target of the robbery—the eventual victim in this case, a marijuana dealer.[4]

The trio then picked up the accomplice and went to "g[e]t a gun" "[f]rom … one of [the accomplice's] friends …." The gun was part of the plan to rob the victim. Solis helped coordinate the meeting to acquire the gun. When the group met the accomplice's friends, the friends "[b]asically" handed the gun to Solis who subsequently "wiped all the bullets off" "[j]ust in case anything happened …." Solis then showed the accomplice "how to use it …." The accomplice responded, "I don't want to do it, I don't know, I'm not sure." Solis then gave the gun to the accomplice and the group left to meet the victim.[5]

While on the way to the meetup, the victim texted Solis's accomplice, "I only want you to hop in my car[,] niggas tried to rob me last night[.]" Just before reaching the destination, Solis and the accomplice continued discussing the plan to rob the victim.[6]

---

[3] The friend had "made a post on Instagram" stating, "I'm free today … hit me up. I have a car …." According to the friend's testimony, Solis contacted him and "that's how [they] met up …."

[4] There was no direct evidence of an agreement to commit robbery.

[5] The record indicates the crime occurred around 1:54 p.m. at a park with several homes nearby.

[6] Messages on the victim's phone indicate he mentioned the prior robbery to the accomplice nearly 40 minutes before the shooting. This specific reference to a discussion between Solis and the accomplice occurred about 10 minutes before the shooting.

When Solis's group arrived, the victim and his girlfriend—who was present with the victim—expressed concern about the fact the accomplice did not come alone.[7] The accomplice nonetheless complied with the victim's request and approached the car alone.

The accomplice returned to Solis and said, " 'This is a stupid idea' " and " '[o]h, a gir—the girl's in the car, the girl's in the car. It's sketching me out.' " Solis told the accomplice, "Just do it," and "don't mess it up[.]" At least one person in the group said, "[W]e don't have to do this," but Solis and the accomplice "ignore[d]" him.

The accomplice went back to the victim's car and entered the back seat. "As soon as he entered … he pointed the gun" in both the victim's and the girlfriend's "face[s.]" The girlfriend unsuccessfully tried to grab the gun while the victim "took off" driving. The girlfriend began "kicking," "pushing," "punching," and "screaming" at the accomplice, "fight[ing] for [her] life." When the victim shouted, "Kick him out, babe," the accomplice "shot him[] and the[ car] crashed."[8]

Solis's group drove over toward the crash and Solis "got out and grabbed" marijuana that had fallen onto the street from the victim's car. The group then "rushed over" to the accomplice, picked him up, and Solis took the gun and "started wiping it down." The group later dropped Solis and the accomplice off at a different park where they were quickly arrested by local law enforcement.

After Solis's arrest, he participated in an interview with a law enforcement officer. During the interview, Solis disclosed he "almost shot [his] foot" and "would've blown [it] off" by accidentally discharging a firearm on a prior occasion.

---

[7] Solis was aware the victim wanted only the accomplice to approach.

[8] The parties stipulated a "gunshot wound" caused the victim's death.

4.

**Verdict and Sentence**

The jury found Solis guilty as charged, including finding true the robbery-murder special circumstance. He was sentenced to serve life in prison without parole on count 1 plus nine years four months on the remaining charges.

## DISCUSSION

"In Senate Bill No. 1437 (2017–2018 Reg. Sess.) …, the Legislature significantly narrowed the scope of the felony-murder rule." (*People v. Strong* (2022) 13 Cal.5th 698, 703 (*Strong*).) "Senate Bill 1437 'amend[ed] the felony murder rule … to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' " (*People v. Gentile* (2020) 10 Cal.5th 830, 842.)

There is no evidence in this case Solis personally killed or intended to kill the victim. Accordingly, to prove Solis committed murder as an aider and abettor to robbery, the prosecution was required to prove Solis was both a major participant in the robbery and acted with reckless indifference to human life. The sole question on appeal is whether the evidence proved as much. We hold that it did.

## I. Standard of Review

"When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. … We presume in support of the judgment the existence of every fact the trier of fact reasonably could infer from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.] A reviewing court neither

reweighs evidence nor reevaluates a witness's credibility." (*People v. Lindberg* (2008) 45 Cal.4th 1, 27 (*Lindberg*).)

## II. Major Participation

The California Supreme Court illuminated major participation in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*). There, the Supreme Court identified several factors relevant to finding major participation. Those factors, posed as questions, include:

> "What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or using lethal weapons? What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants? Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death? What did the defendant do after lethal force was used?" (*Id.* at p. 803, fn. omitted.)

In highlighting these factors, the Supreme Court acknowledged "[n]o one of these considerations is necessary, nor is any one of them necessarily sufficient." (*Ibid.*) We examine each in turn.

### A. Role in Planning the Crime

There is no doubt Solis planned this robbery. He texted the accomplice explicating an intent to rob "more" people. The plan involved using a gun. Solis does not dispute these facts and there is no reason not to believe he was the leader of the group.

### B. Role in Procuring Weapons

The evidence indicates Solis was involved in acquiring the gun used in the crime. Although there is little evidence he *initiated* contact with the party to "g[e]t the gun," he did know the plan involved the gun and helped coordinate its retrieval. In fact, he literally retrieved it and "wiped all the bullets off," proving he was intimately involved in

6.

procuring the gun. He also taught the accomplice how to use the gun. Solis does not suggest otherwise.

## C. Awareness of Particular Dangers Related to Crime, Participants, and Weapons

In the interview with law enforcement, Solis demonstrated an acute awareness of the dangers related to guns—especially when handled by an untrained person. Because he had to teach the accomplice how to use the gun, he had reason to believe the accomplice was not trained in handling one.

Solis was personally aware an untrained individual could accidentally discharge a gun causing catastrophic damage. He also knew the accomplice declined to commit the robbery at multiple junctures—when they first received the gun and immediately before attempting the robbery when the accomplice stated, " 'This is a stupid idea ….' " But there was, on the other hand, no evidence indicating the accomplice was prone to violence.

Using a gun to commit a robbery is, deplorably, not uncommon. The Supreme Court has suggested gun usage alone amounts to " 'a garden-variety armed robbery.' " (*People v. Clark* (2016) 63 Cal.4th 522, 617, fn. 74 (*Clark*).) There is little else to distinguish the *planned* robbery in this case.

The People argue the fact Solis committed prior robberies with knives and a previous victim resisted the robbery[9] means Solis "learned that a knife was not a sufficiently intimidating weapon to use in a robbery." We find no material relevance in the prior robberies.

---

[9] As noted, we have omitted the prior robberies from our discussion. Suffice it to say, those were armed-by-knife robberies of pizza-delivery persons. Other than displaying the knife in an aggressive, menacing manner, those robberies did not involve actual violence. But in one the victim did resist by not fully complying with Solis's demand.

It is commonly understood victims might well resist a robbery. "Indeed, the possibility of bloodshed is inherent in the commission of any violent felony and this possibility is generally foreseeable and foreseen; it is one principal reason that felons arm themselves." (*Tison v. Arizona* (1987) 481 U.S. 137, 151 (*Tison*).) For this reason, we do not find significant the fact Solis committed prior armed robberies. Those prior robberies were fortunately benign in comparison to the main robbery at issue.

**D. Presence At Killing Indicating Ability to Prevent Death and Particular Role In Death**

Solis was present at the scene in a meaningful capacity. Although he suggests he "was not … in a position to stop the shooting," we disagree. When Solis first taught the accomplice how to use the gun, the accomplice responded, "I don't want to do it, I don't know, I'm not sure." Prior to shooting the victim, the accomplice hesitated to perpetrate the robbery and actually sought counsel from Solis, suggesting the plan was " 'a stupid idea ….' " Solis also knew the victim was aware he might be robbed.

Undeterred, Solis told the accomplice to "[j]ust do it." Meanwhile, another individual in the group advocated *not* committing the robbery. We do not doubt the fact a rational jury could reasonably believe Solis should have proceeded with caution when presented, on distinct occasions, with the accomplice's separate reluctance to both handle the gun and commit the robbery. That inference supports finding Solis's conduct in casting aside additional risk played a particular role in the victim's death.

It is true, as Solis points out, we must focus on whether he could prevent the shooting, not on whether he could prevent the robbery. But the circumstances in this case strongly suggest he could have prevented the shooting had he appreciated the additional, unanticipated risks involved with *this* crime—the accomplice's consistent and explicit unease and trepidation about resistance and the victim's prescience about robbery.

At the outset, the accomplice feared the victim would not come alone. While Solis and the accomplice were in the car on the way to meet the victim, the victim texted the

accomplice, informing him someone tried to rob him the night before. It is reasonable to infer the accomplice mentioned the text to Solis because they both discussed the plan *immediately* preceding the robbery. Indeed, Solis knew the victim wanted only the accomplice to approach the vehicle.

Then, when it came time to commit the crime, the accomplice retreated from the victim's car because he felt "sketch[ed] … out" by the girlfriend's presence. Solis knew all these facts and still urged the accomplice to commit the robbery while alone and outnumbered in a car.

### E. Actions After Lethal Force

The People suggest the fact Solis completed the robbery by picking up the marijuana, failed to render aid, "call[] 911," "express any concern," or to accept responsibility evidences the fact he did not care the accomplice shot the victim. To a large extent we might agree but we do not glean too much from these facts.

The Supreme Court has recognized the "desire to flee the scene as quickly as possible" while knowing "help in the form of police intervention was arriving … make[s] it difficult to infer" state of mind. (*Clark, supra,* 63 Cal.4th at p. 620.) The facts in this case appear to fit that mold.

After the victim was shot the vehicle quickly crashed into another car. The accident occurred in the daytime near several homes in a residential neighborhood.[10] Many people would reasonably assume emergency assistance would arrive.[11] (*In re*

---

[10] One witness testified other people were present at the park where this crime began, "doing normal stuff, walking dogs, hanging out …." A law enforcement officer testified there was "a call for service [for] a collision" at 1:54 p.m. The prosecutor, in closing argument, described the location as "a residential neighborhood on a Sunday afternoon …."

[11] The People also argue Solis, after the accomplice shot the victim, laughed and "cleaned the gun and the bullets," proving his "focus was not on" on the victim's condition but rather "was on destroying evidence … so that he would not be caught." We

*Moore* (2021) 68 Cal.App.5th 434, 452.) These circumstances may be too "ambiguous" to conclude anything beyond a reasonable doubt. (See *Clark, supra,* 63 Cal.4th at pp. 619-620.)

### F. Summary

Solis initiated the plan to "rob more" people by texting the accomplice. Solis aided in acquiring both the gun and transportation to commit the crime. Solis taught the accomplice how to use the gun and "wiped all the bullets off." When the accomplice looked to Solis for guidance, Solis gave the ultimate signal to proceed with the crime. Substantial evidence supports the conclusion Solis was a major participant.

## III. Reckless Indifference to Human Life

In *Clark, supra,* 63 Cal.4th 522, the California Supreme Court elucidated the meaning behind reckless indifference to human life. The Supreme Court explicitly considered the following five factors as relevant to finding reckless indifference: "(1) knowledge of weapons, and use and number of weapons," "(2) physical presence at the crime and opportunities to restrain the crime and/or aid the victim," "(3) duration of the felony," "(4) defendant's knowledge of cohort's likelihood of killing," and "(5) defendant's efforts to minimize the risks of the violence during the felony[.]" (*Id.* at pp. 618-623.)

In applying these factors to this case, we keep in mind "no one of these considerations is necessary, nor is any one of them necessarily sufficient." (*Banks, supra,* 61 Cal.4th at p. 803; *Clark, supra,* 63 Cal.4th at p. 618.) We also recognize major participation and reckless indifference " 'significantly overlap …, for the greater the defendant's participation in the felony murder, the more likely that he acted with reckless

---

find these facts too "ambiguous" to reasonably draw a conclusion. (*Clark, supra,* 63 Cal.4th at pp. 619-620.)

indifference to human life.' " (*Clark, supra,* at pp. 614-615, quoting *Tison, supra,* 481 U.S. at p. 153.)

Notably, the "mere fact" "a robbery involves a gun" is not, "on its own," "sufficient to support a finding of reckless indifference to human life …." (*Clark, supra,* 63 Cal.4th at p. 617.) Simple awareness an accomplice is "armed and armed robberies carr[y] a risk of death" does not prove reckless indifference to human life. (*Id.* at p. 618.) " ' "[R]eckless indifference," … encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions.' " (*Strong, supra,* 13 Cal.5th at p. 706.)

## A. Knowledge of Weapons and Use and Number of Weapons

As noted above, Solis certainly knew the planned robbery involved a gun. But the plan involved only one weapon. There is nothing about these facts alone to elevate the danger above that inherent in any armed-by-gun robbery.

## B. Presence at Crime and Opportunity to Restrain Crime or Aid Victim

Solis's presence at the crime is a critical factor. Contrary to his contention, this is not a situation he "lacked control over" the accomplice "once they arrived on the crime scene …." (*In re Scoggins* (2020) 9 Cal.5th 667, 679 (*Scoggins*).) In a fateful moment, the accomplice paused before attempting the robbery and retreated to Solis who then offered encouragement and reassurance to continue with the plan. Solis had an opportunity to restrain the crime but instead sent the nervous accomplice into a palpably precarious situation with a loaded gun. The accomplice quite literally acted at Solis's direction.

We reiterate the fact Solis did not aid the victim in any manner. But we give limited weight to this fact given the record. (See *Scoggins, supra,* 9 Cal.5th at p. 679 ["when different inferences may be drawn from the circumstances, the defendant's actions after the shooting may not be very probative of his mental state."].)

11.

### C.  Duration of Felony

The Supreme Court has recognized a killing occurring "quickly" might cut against finding reckless indifference.  (See *Scoggins, supra,* 9 Cal.5th at p. 679.)  Where the killing occurs, on the other hand, after "a long sequence of events," there is more reason to find reckless indifference because there is greater opportunity to prevent death or, conversely, its probability becomes much more apparent.  (*Ibid.*)

We disagree with the People's attempt to characterize "this [as] a crime that spanned days."  It is true, of course, the crime was planned days in advance.  But the duration relevant to reckless indifference is the time elapsing after the arriving on the crime scene through the shooting.

Viewed properly, the crime in this case did not last long.  By all accounts it lasted only a few minutes.[12]

### D.  Knowledge of Cohort's Propensity for Violence

There is no evidence the accomplice was prone to violence.  Neither was there evidence the other group members were violent.

### E.  Efforts to Minimize Violence

In *Clark, supra,* the Supreme Court instructed reviewing courts to "consider" "efforts to minimize the risk of violence in the [underlying] felony" "as being part of all the relevant circumstances that considered together go towards supporting or failing to support the jury's finding of reckless indifference to human life."  (*Clark, supra,* 63 Cal.4th at p. 622.)

Admittedly, we find it somewhat difficult to square evaluating efforts to minimize violence with the reviewing standard which requires us to "view the record in the light

---

[12] The victim's girlfriend described the entire encounter as lasting less than 10 minutes.

12.

most favorable to the judgment …." (*Lindberg, supra,* 45 Cal.4th at p. 27.) Nonetheless, we make the following observations.

Solis did tell the accomplice to not "mess it up[.]" This statement is reasonably interpreted to mean do not shoot or kill anyone. The record also discloses the crime occurred during the daytime, near a residential neighborhood, at a park with other people present. Arguably, these facts cut against reckless indifference because, as a general proposition, people are less likely to resort to violence when innocent bystanders and witnesses are present than when a crime occurs in a desolate, remote location. But the circumstances when and where the robbery in this case took place were not due to Solis's efforts.

The People argue Solis "took absolutely no steps to minimize the possibility of violence during the crime." Although one can disagree with that characterization, and reiterate there was no intent to shoot or kill, we find any effort to minimize violence ambiguous. This factor does not materially impact our review.

### F. Summary

The main factors relevant to reckless indifference are knowledge a gun was involved in the robbery and an opportunity to restrain the shooting. There is no doubt Solis knew a gun was involved. He also had a very meaningful opportunity to restrain the crime when unplanned-for obstacles—the girlfriend's presence and the accomplice's persisting doubt—were presented. But Solis determined to proceed with the plan notwithstanding a reduced chance for success. Substantial evidence supports the conclusion Solis acted with reckless indifference to human life.

### CONCLUSION

The evidence sufficiently proved both major participation and reckless indifference to human life. "[S]ubstantial evidence supports the inference [Solis] was the mastermind who planned and organized the … robbery and who was orchestrating the events at the scene of the crime." (*Clark, supra,* 63 Cal.4th at p. 612.) His role in

13.

planning the robbery, acquiring the gun, and arranging transportation leaves no doubt he was a major participant. The group in fact looked to him as the ringleader.

The record also establishes Solis acted with reckless indifference to human life. Solis knew the robbery involved a gun. He knew the accomplice did not know how to use the gun and did not want to commit the crime. He knew things could wrong so he "wiped all the bullets off …." He knew the accomplice was worried about the victim not being alone and knew the victim was on alert to a potential robbery.

The accomplice's fear was borne out and he predictably hesitated. Undeterred, Solis sent the outnumbered, nervous accomplice back into the car to commit robbery with a loaded gun.

Solis's actions support the conclusion he acted with reckless indifference to human life because they " ' "encompass[] a willingness to kill … to achieve a distinct aim," ' " i.e., commit robbery. (*Strong, supra,* 13 Cal.5th at p. 706.) It was apparent things could go awry when the accomplice declined to commit the crime *due to the fact he was outnumbered*, a fear he expressed *from the outset*.

Because these additional circumstances were apparent *before* the actual crime was attempted, they establish the requisite "elevated … risk to human life beyond those risks inherent in any armed robbery" and materially distinguish this robbery from other armed robberies in which an accomplice commits an unanticipated killing. (*Clark, supra,* 63 Cal.4th at p. 623.) They also reflect the fact Solis "knew there would be a likelihood of resistance and the need to meet that resistance with" a loaded gun would end in disaster. (*Banks, supra,* 61 Cal.4th at p. 811.)

In urging reversal, Solis relies heavily on *In re Ramirez* (2019) 32 Cal.App.5th 384 (*Ramirez*). There, the defendant "supplied the guns that ultimately were used in the attempted robbery and murder," "knew the guns were loaded and operable," knew his confederates "were carrying the guns," knew "an armed robbery was contemplated," provided "a ride," "waited" nearby "close enough to hear and possibly see what was

14.

going on," "and then acted as a getaway driver after the shooting." (*Id.* at p. 404.) This Court acknowledged "it appears the shooting occurred in response to the victim resisting," "[t]here was no evidence [the defendant] was involved in any planning beyond agreeing to" commit robbery, and "he was [not] close enough to exercise a restraining effect on the crime or his colleagues." (*Id.* at pp. 404-405.) We ultimately found neither major participation nor reckless indifference. (*Id.* at pp. 405-406.)

This case is different. Here, Solis planned the robbery from the beginning and was intimately involved in compiling each component to commit the crime. There is no doubt Solis was the leader and a major participant.

Not only was Solis close enough to exercise a restraining effect on the crime or the accomplice, he actually could have done so but declined. While it is true this shooting occurred in response to resistance, the victim's resistance appeared far more likely given the circumstances than the usual armed robbery. Solis knew the victim was on edge about robbery. That was the exact reason the victim brought his girlfriend along and instructed the accomplice to approach alone.

Solis ignored every single warning along the way, disregarded multiple opportunities to abort the crime, and rushed headlong into danger by urging the reluctant accomplice to "[j]ust do it," strongly suggesting he chose robbery over preserving life. His conduct evinces " ' "a willingness to kill" ' " to commit robbery " 'even if [he did] not specifically desire that death [w]as the outcome of his actions.' "[13] (*Strong, supra,* 13 Cal.5th at p. 706.)

---

[13] It is important to recall we do not independently weigh the evidence. Rather, we examine the record to determine whether it contains substantial evidence supporting a jury's already rendered verdict. (*Lindberg, supra,* 45 Cal.4th at p. 27.)

In total, the evidence is sufficient to prove major participation and reckless indifference to human life.[14] The murder conviction will stand.[15]

## DISPOSITION

The judgment is affirmed.


SNAUFFER, J.

WE CONCUR:


MEEHAN, Acting P. J.


DE SANTOS, J.

---

[14] We reiterate " 'the greater the defendant's participation in the felony murder, the more likely that he acted with reckless indifference to human life.' " (*Clark, supra,* 63 Cal.4th at p. 615.) Solis was greatly involved in this crime.

[15] For nonkillers like Solis, the robbery-murder special circumstance likewise requires proof of major participation and reckless indifference. The analysis is identical and our conclusion applies equally to Solis's challenge to the special circumstance finding.